UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

Jordan Hospital                              )
275 Sandwich Street                          )
Plymouth, Massachusetts 02360,               )
                                             )
        Plaintiff,                           )
                                             )
            vs.                              )
                                             )   Case No. _____
Michael O. Leavitt, Secretary of the         )
United States Department of Health and       )
Human Services                               )
200 Independence Avenue, S.W.                )
Washington, D.C. 20201                       )
                                             )
        Defendant.                           )
                                             )

## COMPLAINT

NOW COMES Plaintiff in this civil action, Jordon Hospital ("Plaintiff"), by and through its undersigned counsel, and for its Complaint against Michael O. Leavitt, Secretary of the Department of Health and Human Services ("the Secretary" or "Defendant"), states as follows:

### I.   INTRODUCTION

1.  Plaintiff is a not-for-profit hospital that participates in the Medicare program, and at times pertinent to this Complaint, operated a twenty-five bed, hospital-based skilled nursing facility ("SNF") known as the Peter Chapman Transitional Care Unit ("PCTCU"). Plaintiff took an administrative appeal from its Notice of Program Reimbursement ("NPR") for its Medicare cost reporting year ending September 30, 1998, based on a challenge to a denial by the Centers for Medicare and Medicaid Services

("CMS") of Plaintiff's request for a "new provider exemption" with respect to the PCTCU under regulations at 42 C.F.R. 413.30(d) (formerly codified at 42 C.F.R. § 413.30(e)). That exemption, if granted, would have resulted in increased Medicare reimbursement to the hospital for its fiscal years 1996 through 1998. Based upon an evidentiary hearing and other submissions by the Plaintiff and its Medicare fiscal intermediary, the Provider Reimbursement Review Board ("PRRB") found that CMS improperly denied Plaintiff's exemption request and that Plaintiff was entitled to increased program reimbursement for each of its cost reporting years from 1996 to 1998. However, the Administrator of CMS "vacated" the decision of the PRRB with respect to whether the Plaintiff was entitled to a new provider exemption and remanded the issue to CMS for further consideration, while simultaneously declaring that the Board lacked jurisdiction to afford relief to Plaintiff for any fiscal year other than 1998. In this Complaint, Plaintiff challenges this jurisdictional finding, as well as the validity and legal effect of the Administrator's decision to vacate the PRRB's decision.

## II.   JURISDICTION AND VENUE

2.   This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq. (the "Medicare statute"), the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., and The United States Constitution.

3.   This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C. § 1331, 28 U.S.C. § 2201, and 28 U.S.C. § 1361.

4.   Pursuant to 42 U.S.C. § 1395oo(f)(1), venue for Plaintiff's Complaint is proper in the United States District Court for the District of Columbia.

2

### III. PARTIES

5.      Plaintiff Jordon Hospital is a 136 bed, not-for-profit, acute care hospital located in Plymouth, Massachusetts, that participates as a provider in the Medicare program. During its fiscal year 1996, 1997, and 1998 Medicare cost reporting periods, Plaintiff operated, as a unit of the hospital, a twenty-five bed SNF, known as the PCTCU.

6.      Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("DHHS"), the federal department responsible for the administration of the Medicare program.

### IV.   THE MEDICARE PROGRAM AND APPEALS PROCESS

7.      Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965. As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65. Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

8.      The Medicare statute created two separate insurance programs for Medicare beneficiaries, the Hospital Insurance Benefits program established under Part A of title XVIII of the Social Security Act, *see* 42 U.S.C. §§ 426, 1395c-1395i-4, and the Supplementary Medical Insurance program established under Part B of title XVIII, *see* 42 U.S.C. §§ 1395j-1395w-4(j). Part A covers certain "provider" (*i.e.*, institutional) services, including inpatient hospital services. 42 U.S.C. § 1395d(a)(1). Part B generally covers outpatient services and "medical and other health services." 42 U.S.C. § 1395k(a).

9.      The Secretary has delegated much of the responsibility for administering the Medicare program to CMS, formerly known as the Health are Financing

Administration (hereinafter collectively referred to as "CMS"), which is a component of DHHS. The Secretary, through CMS, has contracted out many of his audit and payment functions under Medicare to organizations (usually insurance companies) known as fiscal intermediaries ("FIs").

10. Medicare law in effect during the period pertinent to this Complaint required that SNFs be reimbursed for their "reasonable cost" of providing services. 42 U.S.C. § 1395x(v).

11. Reasonable cost is defined as "the cost actually incurred, excluding there from any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . . ." 42 U.S.C. § 1395x(v)(1)(A).

12. CMS has, by regulation, established certain limits on SNF costs that may be recognized as reasonable in determining Medicare program payments, known as Medicare routine cost limits ("RCLs"). Federal regulations in effect at all times pertinent to this Complaint provide for an exemption from RCLs, however, for a new SNF, which is defined as a provider of inpatient services that has operated as a SNF (or the equivalent), for less than 3 full years, under either present or previous ownership. 42 C.F.R. § 413.30(d). A SNF that has relocated may also be considered a new provider if it serves a substantially different inpatient population. Medicare Provider Reimbursement Manual § 2604.1. A new provider exemption expires at the end of the SNF's first Medicare cost reporting period beginning at least 2 years after the SNF accepts its first patient. 42 C.F.R. § 413.30(d).

13. The purpose of the "new provider exemption" described in the preceding paragraph is to recognize and accommodate the fact that a new SNF will ordinarily incur

4

increased costs during its initial years of operation, in part because of the time it characteristically takes for a new facility to attract and establish a patient population.

14. At the close of a fiscal year, a SNF must submit to its FI a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R. § 413.24(f). The FI is required to analyze and audit the cost report and inform the SNF of a final determination of the amount of Medicare reimbursement through an NPR. 42 C.F.R. § 405.1803.

15. The Medicare Act and its implementing regulations permit a SNF (or other provider) that is dissatisfied with its FI's determination to appeal the NPR by filing, within 180 days after notice of the NPR, a request for a hearing before the Provider Reimbursement Review Board (the "PRRB"), an administrative body established by statute to adjudicate certain Medicare payment disputes. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1801.

16. Procedures for appeals before the PRRB, as well as other CMS policies and interpretations of Medicare rules and standards applicable to Medicare providers, are more specifically described in federal regulations appearing in Chapter IV of Title 42 of the Code of Federal Regulations, 42 C.F.R. § 400, *et seq.*, and in administrative guidelines issued by DHHS known as the Provider Reimbursement Manual ("PRM").

17. Upon consideration of a provider appeal, the PRRB has authority to affirm, modify, or reverse a final determination of a provider's FI with respect to a cost report, and to make other revisions regarding matters that may not have been considered by the FI in making its final determination. 42 U.S.C. § 1395oo(d).

18. A decision of the PRRB on a SNF's appeal constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of a SNF's receipt of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). The Secretary has delegated his review authority under the statute to the Administrator of CMS (the "Administrator").

19. A decision of the Administrator reversing or modifying a PRRB decision also constitutes final administrative action, subject to judicial review.

20. Federal regulations permit the Administrator, in lieu of reversing, affirming, or modifying a decision of the PRRB, to remand a case to the PRRB for issuance of a new decision based on development of additional facts or new issues, or to consider the applicability of laws or regulations other than those initially considered by the PRRB. 42 C.F.R. § 405.1875(g), (h). A remand to the PRRB by the Administrator has the effect of vacating the Board's previous decision; and a new decision issued by the Board after remand is final unless the Administrator reverses, affirms, modifies, or again remands the case to the Board in accordance with the provisions cited above. Id.

21. A provider may obtain judicial review of a final administrative decision by filing suit, within 60 days of receipt of the final decision, in the U.S. District Court for the judicial district in which the provider is located or in the U.S. District Court for the District of Columbia. 42 U.S.C. § 1395oo(f)(1).

## V.     FACTS SPECIFIC TO THIS CASE

22. During the time period relevant to this Complaint, Massachusetts law required a provider to obtain a Determination of Need ("DON") before constructing and opening a new nursing facility. 105 MASS. CODE REGS. 100.000-.981. In many other

6

states, a DON is commonly referred to as a Certificate of Need or "CON." The Massachusetts Department of Health ("MDPH") is responsible for issuing DONs and licensing health care facilities in Massachusetts.

23. Massachusetts categorizes nursing facilities according to the level of care that they furnish. A Level II facility must furnish "continuous skilled nursing care and meaningful availability of restorative services and other therapeutic services" in addition to custodial care. 105 MASS. CODE REGS. 151.020. A Level III facility furnishes custodial care with routine nursing services and only periodic availability of skilled nursing or therapeutic services. Id.

24. In 1992, the MDPH imposed a moratorium on DON applications for new nursing facilities. 105 MASS. CODE REGS. 100.302(D). MDPH policy allowed an exception process, however, whereby an entity could obtain a DON to open a new Level II SNF if it first arranged, by contract, for a Level III nursing facility to close. To fall within this exception, an entity intending to open a new Level II SNF first had to locate a Level III nursing facility interested in closing its beds, and then apply for the right to operate a SNF containing an equal or lesser number of new beds.

25. Plaintiff entered into discussions with Greenlawn Nursing Home ("Greenlawn"), a Level III nursing facility located in Middleboro, Massachusetts, regarding the possible closure of its beds. Greenlawn agreed to close its beds and transferred the last patient out of its facility on January 11, 1995. It received conditional approval to suspend its license from MDPH on March 2, 1995.

26. On March 31, 1995, Plaintiff entered into a contract with Shirley Dionne, the operator of Greenlawn, under which Ms. Dionne acknowledged that she wished to give

up her right to operate Greenlawn, and that Plaintiff wished to obtain the right to operate a SNF, and also obligated Ms. Dionne to assist Plaintiff in obtaining from MDPH the right to operate a SNF. Under the contract, Plaintiff agreed to pay consideration to Ms. Dionne in the amount of $300,000 for this assistance.

27. The contract further expressly specified that Plaintiff did not "acquire any interest in the real estate, license, furnishings, equipment, receivables, notes, or other assets" of Greenlawn.

28. Plaintiff completed construction of its 25 bed SNF, the PCTCU, in December of 1995, and admitted the first patient to the PCTCU on December 11, 1995. The PCTCU received CMS certification for Medicare participation effective December 15, 1995.

29. In July of 1996, Massachusetts law relating to the issuance of DONs changed. Under a new provision of law enacted through the 1996 DON Act and appearing at Section 31 of Chapter 203 of the 1996 Massachusetts Acts, any hospital that was previously issued a DON has its DON superseded and replaced by a new DON authorized by the 1996 Act. As a result, on September 20, 1996, the MDPH replaced the prior DON that the PCTCU had obtained and operated under since December, 1995, with a new DON issued under the 1996 Act and made effective retroactive to December 8, 1995.

30. On June 17, 1997, Plaintiff applied to its FI, then C&S Administrative Services, for a "new provider exemption" from the Medicare RCLs pursuant to 42 C.F.R. § 413.30(c), (d). This application was returned to the Plaintiff in July of 1997 because Plaintiff had been reassigned to a new FI, Associated Hospital Services; and on December 31, 1997, Plaintiff resubmitted its exemption application to its new FI.

31. By letter dated July 15, 1998 from its FI, Plaintiff was informed that CMS had denied Plaintiff's request for a new provider exemption, concluding that the PCTCU qualified neither as a new provider nor a relocated provider under applicable federal standards. CMS based this conclusion on inaccurate contentions that the Plaintiff purchased Greenlawn, including its bed rights and DON, and, accordingly, review of the services furnished by Greenlawn during a three-year "look-back" period was relevant to the determination of whether the Plaintiff had operated as a SNF or the equivalent of a SNF, under present and previous ownership, for less than three years. CMS further contended, inaccurately, that Greenlawn had provided skilled nursing and rehabilitative services in a manner equivalent to a SNF during the three year look-back period, and had served the same inpatient population as the PCTCU.

32. Plaintiff's FI made adjustments to Plaintiff's Medicare cost report for its FY 1998 based on application of RCLs to the PCTCU, thereby giving effect to the CMS denial of Plaintiff's application for exemption from the RCLs. The NPR for Plaintiff's FY 1998 cost report, incorporating these adjustments, was issued on September 25, 2000, and Plaintiff filed a timely appeal of that NPR with the PRRB on March 22, 2001. As permitted by Medicare regulations, Plaintiff, on April 7, 2005, added to its appeal the issue of whether its application for a new provider exemption was properly denied.

33. Had the new provider exemption requested by Plaintiff been granted by CMS and the FI, the exemption from RCLs would have applied to the period extending to the end of the cost reporting period that began at least two years after the PCTCU admitted its first patient, or from the inception of the PCTCU operations in December of 1995 to the

end of Jordon Hospital's cost reporting year that began October 1, 1998 and ended September 30, 1999.

34. The cost reporting period that began at least two years after the PCTCU began operations was the Plaintiff's cost period ending September 30, 1999. Due to a statutory change in the reimbursement system for SNFs, however, the new provider exemption would not have affected the Plaintiff's reimbursement in that year. *See* Section 4432(a) of the Balanced Budget Act of 1997 (Pub. L. 105-33).

35. A grant of the requested new provider exemption by CMS would have resulted in an increase in Plaintiff's Medicare reimbursement for its fiscal year ending September 30, 1996 ("FY 1996") of approximately $799,000, an increase in Plaintiff's Medicare reimbursement for its fiscal year ending September 30, 1997 ("FY 1997") of approximately $825,000, and an increase in Plaintiff's Medicare reimbursement for its fiscal year ending September 30, 1998 ("FY 1998") of approximately $855,155.

36. Upon consideration of the evidence presented at a hearing before the PRRB, as well as other submissions by Plaintiff and its FI, the PRRB issued a decision dated February 27, 2007, in favor of Plaintiff. Based on the evidence and applicable legal principles, the PRRB correctly determined that Plaintiff's transaction with Greenlawn with respect to its DON did not represent a purchase of Greenlawn, and that the 1996 change in Massachusetts law had resulted in Plaintiff acquiring and operating under a new DON that did not derive from Greenlawn and was not indicative of any relationship between the PCTCU and Greenlawn that was inconsistent with the grant to Plaintiff of a new provider exemption. The PRRB decided that the Plaintiff had been improperly denied a new provider exemption from the RCLs for its provider-based SNF, and accordingly ordered

that, by operation of law, the exemption was granted for Plaintiff's FYs 1996, 1997, and 1998.

37. The Acting Administrator reviewed the PRRB's February 27 decision and, on April 30, 2007, issued a decision purporting to vacate the PRRB decision, and remanding the case back to CMS for redetermination of the question of whether Plaintiff's request for a new provider exemption should be granted, under criteria applied by the United States Court of Appeals for the District of Columbia Circuit in the case of *St. Elizabeth's Medical Center of Boston, Inc. v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005).

38. The decision of the Administrator also noted that the Administrator agreed with the view, expressed by a dissenting minority of the PRRB in this case, that the case before the PRRB was limited to the Plaintiff's FY 1998, and that the PRRB lacked jurisdiction to order application of the new provider exemption to Plaintiff's FYs 1996 and 1997. The Administrator's remand order, therefore, was expressly limited to Plaintiff's FY 1998.

39. Except with respect to the above-mentioned jurisdictional issue, the Administrator's decision neither affirmed, reversed, nor modified the PRRB's decision, nor did it remand the case back to the PRRB as permitted by 42 C.F.R. 405.1875(g).

## COUNT I

### MANDATORY DUTY TO IMPLEMENT FINAL AGENCY DECISION

40. Plaintiff realleges and incorporates by reference paragraphs 1-39 of the Complaint as if fully set forth below.

41. Because the Administrator did not affirm, reverse, or modify the decision of the PRRB with respect to Plaintiff's FY 1998 within the statutory 60 day period after

Plaintiff's receipt of the decision, and did not remand the case to the PRRB as permitted by 42 C.F.R. 405.1875(g), the PRRB's decision respecting FY 1998 remains the final decision of CMS, by operation of law.

42. The PRRB's decision, which pursuant to the Medicare statute represents final agency action with respect to Plaintiff's FY 1998, granted Plaintiff's request for a new provider exemption.

43. The Secretary has a non-discretionary, mandatory duty to give effect to this final decision and action of CMS.

44. The Secretary accordingly has a legal duty to apply the new provider exemption to Plaintiff's FY 1998 and to adjust Plaintiff's final program reimbursement to reflect that exemption.

## COUNT II

### VIOLATION OF THE MEDICARE STATUTE AND REGULATIONS

45. Plaintiff realleges and incorporates by reference paragraphs 1-44 of the Complaint as if fully set forth below.

46. The Administrator lacks authority, under the applicable provisions of the Medicare statute and regulations, to vacate a decision of the PRRB in a Medicare provider appeal, except insofar as a remand by the Administrator to the PRRB for further consideration has the effect of vacating an earlier decision pursuant to 42 C.F.R. § 405.1875(h). The governing statute and regulations make no provision for vacating a decision of the PRRB and remanding an appeal to CMS or any entity other than the PRRB.

47. By purporting to vacate the PRRB's decision in Plaintiff's case, and remanding the case to CMS for reconsideration under additional criteria, Defendant

violated the Medicare statute and its implementing regulations and acted contrary to the procedures established therein for disposition of provider appeals.

48. Defendant's action, in violation of applicable law and regulation, was *ultra vires* and of no force and effect as a matter of law.

49. The Secretary's regulation at 42 C.F.R. § 413.30(d) mandates application of a new provider exemption to a period beginning on the date when a SNF accepts its first patient and extending at least until the end of the SNF's first Medicare cost reporting period beginning at least two years after such date.

50. Insofar as the Administrator's conclusion regarding the scope of the Board's jurisdiction to apply the new provider exemption to Plaintiff's FY 1996 and 1997 cost years may be deemed a modification or reversal of the PRRB's February 27, 2007 decision, that decision is inconsistent with and violates 42 C.F.R. § 413.30(d).

## COUNT III

### ARBITRARY AND CAPRICIOUS AGENCY ACTION

51. Plaintiff realleges and incorporates by reference paragraphs 1-50 of the Complaint as if fully set forth below.

52. The Administrator's action of vacating the decision of the PRRB while remanding the case back to CMS for further consideration on the question of Plaintiff's entitlement to a new provider exemption was arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the standards for valid agency action established in provisions of the Administrative Procedure Act at 5 U.S.C. § 706.

53. The Administrator's decision vacating the PRRB's decision is legally invalid and should be set aside.

13

54. The Administrator's conclusion that the PRRB lacked jurisdiction to order application of a new provider exemption to Plaintiff's FYs 1996 and 1997 is incorrect as a matter of law; and the Administrator's decision that relief granted in the case must be limited to a single cost year is arbitrary, capricious, an abuse of discretion, and otherwise contrary to law, in contravention of the standards and provisions of Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706.

55. The Administrator's conclusion regarding the PRRB's jurisdiction over application of Plaintiff's new provider exemption to Provider's FYs 1996 and 1997 is invalid and should be set aside.

## COUNT IV

### DEPRIVATION OF DUE PROCESS

56. Plaintiff realleges and incorporates by reference paragraphs 1-55 of the Complaint as if fully set forth below.

57. The Medicare statute and federal regulations in Chapter IV of Title 42 of the Code of Federal Regulations establish the process Plaintiff is due with regard to its appeal of the Medicare program determinations at issue in this case.

58. By failing to follow the procedures described in 42 C.F.R. § 405.1875 with respect to administrative review of a PRRB decision, which procedures do not include any process for vacating a decision of the PRRB except where the underlying case is remanded back to the PRRB itself, the Administrator's Decision and action of April 30, 2007, has deprived Plaintiff of property without due process of law.

**WHEREFORE**, Plaintiff requests relief as follows:

(1)     A declaration by the Court that the decision of the Administrator vacating the decision of the PRRB dated February 27, 2007 regarding Plaintiff's FY 1998, and remanding to CMS the issue of Plaintiff's entitlement to a new provider exemption for FY 1998, is legally invalid and should set aside.

(2)     A declaration by the Court that the decision of the PRRB dated February 27, 2007 with respect to Plaintiff's entitlement to a new provider exemption, and application of that exemption to Plaintiff's FYs 1996 through 1998, represents a final agency decision and action, and must be given full legal force and effect by the Secretary and his agents and delegates.

(3)     A declaration by the Court that the new provider exemption to which Plaintiff is entitled pertains to each of its FYs 1996, 1997 and 1998, and that the PRRB had jurisdiction to order adjustment of the Plaintiff's Medicare reimbursement for each of these fiscal years to reflect the exemption.

(4)     An order requiring the Secretary, through CMS and Plaintiff's FI, to adjust Plaintiff's Medicare reimbursement for its FYs 1996 through 1998 to reflect application to those years of the new provider exemption from RCLs to which Plaintiff was and is entitled, to reimburse to Plaintiff all amounts that Plaintiff would have received in Medicare reimbursement had the exemption been applied *ab initio* to its FYs 1996, 1997, and 1998, and to pay Plaintiff interest on such amounts pursuant to 42 C.F.R. § 1395oo(f)(2).

(5)     An order awarding Plaintiff its costs and fees incurred in this litigation, and such other relief as this Court deems just and appropriate.

       Respectfully submitted,

       */s/ Barbara Straub Williams*
       Barbara Straub Williams
       (D.C. Bar No. 396582)
       Edith S. Marshall
       (D.C. Bar No. 328310)
       Ronald S. Connelly
       (D.C. Bar No. 488298)
       POWERS PYLES SUTTER & VERVILLE, PC
       1501 M Street, N.W., 7th Floor
       Washington, D.C.  20005
       (202) 466-6550

       Attorneys for Plaintiff, Jordan Hospital

Dated:  June 28, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Jordan Hospital

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Plymouth, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Barbara Straub Williams, Edith Marshall
Powers, Pyles, Sutter & Verville, PC
1501 M Street, NW, 7th Floor
Washington, DC 20005
(202) 466-6550

## DEFENDANTS
Michael O. Leavitt, Secretary of Dept. of Health and Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)
United States Attorney for the District of Columbia

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● **C. Administrative Agency Review**
☒ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 U.S.C. § 1395oo(f); 5 U.S.C. § 706 Plaintiff challenges legal effect and validity of administrative action vacating prior decision of administrative tribunal and modifying jurisdictional ruling.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 6/28/07   SIGNATURE OF ATTORNEY OF RECORD  *Barbara Straub Williams*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.