**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| Jordan Hospital ) | |
| 275 Sandwich Street ) | |
| Plymouth, Massachusetts 02360, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:07-cv-01160 |
| Michael O. Leavitt, Secretary of the ) | |
| United States Department of Health and ) | |
| Human Services ) | |
| 200 Independence Avenue, S.W. ) | |
| Washington, D.C.  20201 ) | |
| ) | |
| Defendant. ) | |

---

**AMENDED COMPLAINT**

NOW COMES Plaintiff in this civil action, Jordon Hospital ("Plaintiff"), by and

through its undersigned counsel, and for its Complaint against Michael O. Leavitt,

Secretary of the Department of Health and Human Services ("the Secretary" or

"Defendant"), states as follows:

## I.      INTRODUCTION

1.      Plaintiff is a not-for-profit hospital that participates in the Medicare

program, and at times pertinent to this Complaint, operated a twenty-five bed, hospital-

based skilled nursing facility ("SNF") known as the Peter Chapman Transitional Care Unit

("PCTCU").  Plaintiff took an administrative appeal from its Notice of Program

Reimbursement ("NPR") for its Medicare cost reporting year ending September 30, 1998,

based on a challenge to a denial by the Centers for Medicare and Medicaid Services

("CMS") of Plaintiff's request for a "new provider exemption" with respect to the PCTCU

under regulations at 42 C.F.R. 413.30(d) (formerly codified at 42 C.F.R. § 413.30(e)).

That exemption, if granted, would have resulted in increased Medicare reimbursement to

the hospital for its fiscal years 1996 through 1998.  Based upon an evidentiary hearing and

other submissions by the Plaintiff and its Medicare fiscal intermediary, the Provider

Reimbursement Review Board ("PRRB") found that CMS improperly denied Plaintiff's

exemption request and that Plaintiff was entitled to increased program reimbursement for

each of its cost reporting years from 1996 to 1998.  However, the Administrator of CMS

purported to "vacate" the decision of the PRRB with respect to whether the Plaintiff was

entitled to a new provider exemption and to "remand" the issue to CMS for further

consideration, while simultaneously declaring that the Board lacked jurisdiction to afford

relief to Plaintiff for any fiscal year other than 1998.  In this Complaint, Plaintiff

challenges this jurisdictional finding, as well as the validity and legal effect of the

Administrator's decision to vacate the PRRB's decision.

## II.    JURISDICTION AND VENUE

2.       This action arises under Title XVIII of the Social Security Act, 42 U.S.C.

§§ 1395 et seq. (the "Medicare statute"), the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 551 et seq., and The United States Constitution.

3.       This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), 28 U.S.C.

§ 1331, 28 U.S.C. § 2201, and 28 U.S.C. § 1361.

4.       Pursuant to 42 U.S.C. § 1395oo(f)(1), venue for Plaintiff's Complaint is

proper in the United States District Court for the District of Columbia.

### III.    PARTIES

5.      Plaintiff Jordon Hospital is a 136 bed, not-for-profit, acute care hospital located in Plymouth, Massachusetts, that participates as a provider in the Medicare program.  During its fiscal year 1996, 1997, and 1998 Medicare cost reporting periods, Plaintiff operated, as a unit of the hospital, a twenty-five bed SNF, known as the PCTCU.

6.      Defendant Michael O. Leavitt is the Secretary of the United States Department of Health and Human Services ("DHHS"), the federal department responsible for the administration of the Medicare program.

### IV.    THE MEDICARE PROGRAM AND APPEALS PROCESS

7.      Congress enacted the Medicare program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a public health insurance program that furnished health benefits to participating individuals once they reached the age of 65.  Over the years, it has been expanded to provide health benefits to qualifying disabled persons and to individuals suffering from end-stage renal disease.

8.      The Medicare statute created two separate insurance programs for Medicare beneficiaries, the Hospital Insurance Benefits program established under Part A of title XVIII of the Social Security Act, *see* 42 U.S.C. §§ 426, 1395c-1395i-4, and the Supplementary Medical Insurance program established under Part B of title XVIII, *see* 42 U.S.C. §§ 1395j-1395w-4(j).  Part A covers certain "provider" (*i.e.*, institutional) services, including inpatient hospital services.  42 U.S.C. § 1395d(a)(1).  Part B generally covers outpatient services and "medical and other health services."  42 U.S.C. § 1395k(a).

9.       The Secretary has delegated much of the responsibility for administering the Medicare program to CMS, formerly known as the Health Care Financing

Administration (hereinafter collectively referred to as "CMS"), which is a component of

DHHS.  The Secretary, through CMS, has contracted out many of his audit and payment

functions under Medicare to organizations (usually insurance companies) known as fiscal

intermediaries ("FIs").

10.     Medicare law in effect during the period pertinent to this Complaint

required that SNFs be reimbursed for their "reasonable cost" of providing services.  42

U.S.C. § 1395x(v).

11.     Reasonable cost is defined as "the cost actually incurred, excluding there-

from any part of incurred cost found to be unnecessary in the efficient delivery of needed

health services . . . ."  42 U.S.C. § 1395x(v)(1)(A).

12.     CMS has, by regulation, established certain limits on SNF costs that may be

recognized as reasonable in determining Medicare program payments, known as Medicare

routine cost limits ("RCLs").  Federal regulations in effect at all times pertinent to this

Complaint provide for an exemption from RCLs, however, for a new SNF, which is

defined as a provider of inpatient services that has operated as a SNF (or the equivalent),

for less than 3 full years, under either present or previous ownership.  42 C.F.R.

§ 413.30(d).  A SNF that has relocated may also be considered a new provider if it serves a

substantially different inpatient population.  Medicare Provider Reimbursement Manual

§ 2604.1.  A new provider exemption expires at the end of the SNF's first Medicare cost

reporting period beginning at least 2 years after the SNF accepts its first patient.  42 C.F.R.

§ 413.30(d).

13.     The purpose of the "new provider exemption" described in the preceding

paragraph is to recognize and accommodate the fact that a new SNF will ordinarily incur

increased costs during its initial years of operation, in part because of the time it

characteristically takes for a new facility to attract and establish a patient population.

14.     At the close of a fiscal year, a SNF must submit to its FI a "cost report"

showing both the costs incurred by it during the fiscal year and the appropriate share of

those costs to be apportioned to Medicare.  42 C.F.R. § 413.24(f).  The FI is required to

analyze and audit the cost report and inform the SNF of a final determination of the

amount of Medicare reimbursement through an NPR.  42 C.F.R. § 405.1803.

15.     The Medicare Act and its implementing regulations permit a SNF (or other

provider) that is dissatisfied with its FI's determination to appeal the NPR by filing, within

180 days after notice of the NPR, a request for a hearing before the Provider

Reimbursement Review Board (the "PRRB"), an administrative body established by

statute to adjudicate certain Medicare payment disputes.  42 U.S.C. § 1395oo(a); 42 C.F.R.

§ 405.1801.

16.     Procedures for appeals before the PRRB, as well as other CMS policies and

interpretations of Medicare rules and standards applicable to Medicare providers, are more

specifically described in federal regulations appearing in Chapter IV of Title 42 of the

Code of Federal Regulations, 42 C.F.R. § 400, *et seq.*, and in administrative guidelines

issued by DHHS known as the Provider Reimbursement Manual ("PRM").

17.     Upon consideration of a provider appeal, the PRRB has authority to affirm,

modify, or reverse a final determination of a provider's FI with respect to a cost report, and

to make other revisions regarding matters that may not have been considered by the FI in

making its final determination.  42 U.S.C. § 1395oo(d).

18.     A decision of the PRRB on a SNF's appeal constitutes final administrative

action unless the Secretary reverses, affirms, or modifies the decision within 60 days of a

SNF's receipt of the PRRB's decision.  42 U.S.C. § 1395oo(f)(1).  The Secretary has

delegated his review authority under the statute to the Administrator of CMS (the

"Administrator").

19.     A decision of the Administrator reversing or modifying a PRRB decision

also constitutes final administrative action, subject to judicial review.

20.     Federal regulations permit the Administrator, in lieu of reversing, affirming,

or modifying a decision of the PRRB, to remand a case to the PRRB for issuance of a new

decision based on development of additional facts or new issues, or to consider the

applicability of laws or regulations other than those initially considered by the PRRB.  42

C.F.R. § 405.1875(g), (h).  A remand to the PRRB by the Administrator has the effect of

vacating the Board's previous decision; and a new decision issued by the Board after

remand is final unless the Administrator reverses, affirms, modifies, or again remands the

case to the Board in accordance with the provisions cited above.  Id.

21.     A provider may obtain judicial review of a final administrative decision by

filing suit, within 60 days of receipt of the final decision, in the U.S. District Court for the

judicial district in which the provider is located or in the U.S. District Court for the District

of Columbia.  42 U.S.C. § 1395oo(f)(1).

## V.     FACTS SPECIFIC TO THIS CASE

22.     During the time period relevant to this Complaint, Massachusetts law

required a provider to obtain a Determination of Need ("DON") before constructing and

opening a new nursing facility.  105 MASS. CODE REGS. 100.000-.981.  In many other

states, a DON is commonly referred to as a Certificate of Need or "CON." The

Massachusetts Department of Health ("MDPH") is responsible for issuing DONs and

licensing health care facilities in Massachusetts.

23.    Massachusetts categorizes nursing facilities according to the level of care

that they furnish. A Level II facility must furnish "continuous skilled nursing care and

meaningful availability of restorative services and other therapeutic services" in addition to

custodial care. 105 MASS. CODE REGS. 151.020. A Level III facility furnishes custodial

care with routine nursing services and only periodic availability of skilled nursing or

therapeutic services. Id.

24.    In 1992, the MDPH imposed a moratorium on DON applications for new

nursing facilities. 105 MASS. CODE REGS. 100.302(D). MDPH policy allowed an

exception process, however, whereby an entity could obtain a DON to open a new Level II

SNF if it first arranged, by contract, for a Level III nursing facility to close. To fall within

this exception, an entity intending to open a new Level II SNF first had to locate a Level

III nursing facility interested in closing its beds, and then apply for the right to operate a

SNF containing an equal or lesser number of new beds.

25.    Plaintiff entered into discussions with Greenlawn Nursing Home

("Greenlawn"), a Level III nursing facility located in Middleboro, Massachusetts,

regarding the possible closure of its beds. Greenlawn agreed to close its beds and

transferred the last patient out of its facility on January 11, 1995. It received conditional

approval to suspend its license from MDPH on March 2, 1995.

26.    On March 31, 1995, Plaintiff entered into a contract with Shirley Dionne,

the operator of Greenlawn, under which Ms. Dionne acknowledged that she wished to give

up her right to operate Greenlawn, and that Plaintiff wished to obtain the right to operate a

SNF, and also obligated Ms. Dionne to assist Plaintiff in obtaining from MDPH the right to

operate a SNF. Under the contract, Plaintiff agreed to pay consideration to Ms. Dionne in

the amount of $300,000 for this assistance.

27.    The contract further expressly specified that Plaintiff did not "acquire any

interest in the real estate, license, furnishings, equipment, receivables, notes, or other

assets" of Greenlawn.

28.    Plaintiff completed construction of its 25 bed SNF, the PCTCU, in

December of 1995, and admitted the first patient to the PCTCU on December 11, 1995.

The PCTCU received CMS certification for Medicare participation effective December 15,

1995.

29.    In July of 1996, Massachusetts law relating to the issuance of DONs

changed. Under a new provision of law enacted through the 1996 DON Act and appearing

at Section 31 of Chapter 203 of the 1996 Massachusetts Acts, any hospital that was

previously issued a DON has its DON superseded and replaced by a new DON authorized

by the 1996 Act. As a result, on September 20, 1996, the MDPH replaced the prior DON

that the PCTCU had obtained and operated under since December, 1995, with a new DON

issued under the 1996 Act and made effective retroactive to December 8, 1995.

30.    On June 17, 1997, Plaintiff applied to its FI, then C&S Administrative

Services, for a "new provider exemption" from the Medicare RCLs pursuant to 42 C.F.R.

§ 413.30(c), (d). This application was returned to Plaintiff in July of 1997 because

Plaintiff had been reassigned to a new FI, Associated Hospital Services; and on December

31, 1997, Plaintiff resubmitted its exemption application to its new FI.

31.     By letter dated July 15, 1998 from its FI, Plaintiff was informed that CMS

had denied Plaintiff's request for a new provider exemption, concluding that the PCTCU

qualified neither as a new provider nor a relocated provider under applicable federal

standards.  CMS based this conclusion on inaccurate contentions that the Plaintiff

purchased Greenlawn, including its bed rights and DON, and, accordingly, review of the

services furnished by Greenlawn during a three-year "look-back" period was relevant to

the determination of whether the Plaintiff had operated as a SNF or the equivalent of a

SNF, under present and previous ownership, for less than three years.  CMS further

contended, inaccurately, that Greenlawn had provided skilled nursing and rehabilitative

services in a manner equivalent to a SNF during the three year look-back period, and had

served the same inpatient population as the PCTCU.

32.     Plaintiff's FI made adjustments to Plaintiff's Medicare cost report for its FY

1998 based on application of RCLs to the PCTCU, thereby giving effect to the CMS denial

of Plaintiff's application for exemption from the RCLs.  The NPR for Plaintiff's FY 1998

cost report, incorporating these adjustments, was issued on September 25, 2000, and

Plaintiff filed a timely appeal of that NPR with the PRRB on March 22, 2001.  As

permitted by Medicare regulations, Plaintiff, on April 7, 2005, added to its appeal the issue

of whether its application for a new provider exemption was properly denied.

33.     Had the new provider exemption requested by Plaintiff been granted by

CMS and the FI, the exemption from RCLs would have applied to the period extending to

the end of the cost reporting period that began at least two years after the PCTCU admitted

its first patient, or from the inception of the PCTCU operations in December of 1995 to the

9

end of Jordon Hospital's cost reporting year that began October 1, 1998 and ended

September 30, 1999.

34.     The cost reporting period that began at least two years after the PCTCU

began operations was the Plaintiff's cost period ending September 30, 1999.  Due to a

statutory change in the reimbursement system for SNFs, however, the new provider

exemption would not have affected Plaintiff's reimbursement in that year.  *See* Section

4432(a) of the Balanced Budget Act of 1997 (Pub. L. 105-33).

35.     A grant of the requested new provider exemption by CMS would have

resulted in an increase in Plaintiff's Medicare reimbursement for its fiscal year ending

September 30, 1996 ("FY 1996") of approximately $799,000, an increase in Plaintiff's

Medicare reimbursement for its fiscal year ending September 30, 1997 ("FY 1997") of

approximately $825,000, and an increase in Plaintiff's Medicare reimbursement for its

fiscal year ending September 30, 1998 ("FY 1998") of approximately $855,155.

36.     Upon consideration of the evidence presented at a hearing before the PRRB,

as well as other submissions by Plaintiff and its FI, the PRRB issued a decision dated

February 27, 2007, in favor of Plaintiff.  Based on the evidence and applicable legal

principles, the PRRB correctly determined that Plaintiff's transaction with Greenlawn with

respect to its DON did not represent a purchase of Greenlawn, and that the 1996 change in

Massachusetts law had resulted in Plaintiff acquiring and operating under a new DON that

did not derive from Greenlawn and was not indicative of any relationship between the

PCTCU and Greenlawn that was inconsistent with the grant to Plaintiff of a new provider

exemption.  The PRRB decided that the Plaintiff had been improperly denied a new

provider exemption from the RCLs for its provider-based SNF, and accordingly ordered

that, by operation of law, the exemption was granted for Plaintiff's FYs 1996, 1997, and

1998.

37.     The Acting Administrator reviewed the PRRB's February 27 decision and,

on April 30, 2007, issued a decision purporting to vacate the PRRB decision, and

remanding the case back to CMS for redetermination of the question of whether Plaintiff's

request for a new provider exemption should be granted, under criteria applied by the

United States Court of Appeals for the District of Columbia Circuit in the case of *St.*

*Elizabeth's Medical Center of Boston, Inc. v. Thompson*, 396 F.3d 1228 (D.C. Cir. 2005).

38.     The decision of the Administrator also noted that the Administrator agreed

with the view, expressed by a dissenting minority of the PRRB in this case, that the case

before the PRRB was limited to the Plaintiff's FY 1998, and that the PRRB lacked

jurisdiction to order application of the new provider exemption to Plaintiff's FYs 1996 and

1997.  The Administrator's remand order, therefore, was expressly limited to Plaintiff's FY

1998.

39.     Except with respect to the above-mentioned jurisdictional issue, the

Administrator's decision neither affirmed, reversed, nor modified the PRRB's decision,

nor did it remand the case back to the PRRB as permitted by 42 C.F.R. 405.1875(g).

40.     Because the Administrator failed to affirm, reverse, or modify the PRRB's

February 27, 2007, decision within 60 days, as provided by 42 U.S.C. § 1395oo(f)(1), or to

remand the case back to the PRRB within that time pursuant to 42 C.F.R. § 1875(g), the

PRRB's decision became the final and binding decision of the agency, but has not been

treated as such by Defendant.

41.     Subsequently, Plaintiff received a letter from its FI dated August 1, 2007,
stating that the evidence previously submitted by the Plaintiff does not document the type
of services received by the residents at the Greenlawn Nursing Home, and that CMS
requested that "this documentation" be submitted for review.  Attached to the letter was
correspondence from CMS to the FI explaining in greater detail the rationale for this
request.

42.     The FI's August 1 letter also stated that Plaintiff's request for a new
provider exemption to the Medicare skilled nursing facility routine cost limits for the
PCTCU was denied; but this statement was subsequently rescinded in a letter from the FI
to Plaintiff of August 14, 2007, which explained that the request for a new provider
exemption "in fact was not denied" and that the August 1 letter had contained a
misstatement in this regard.

43.     In the correspondence attached to the FI's August 1 letter, CMS indicated
that in order for the PCTCU to be eligible for a new provider exemption from the SNF
routine cost limits, Plaintiff must provide further documentation to "demonstrate that
skilled nursing services were provided to less than half the residents of Greenlawn Nursing
Home."

44.     Plaintiff has already furnished to its FI and submitted to the PRRB
substantial and fully sufficient documentation of the type of services furnished by
Greenlawn, and in fact has furnished to the Intermediary and the PRRB all such
documentation that is available to Plaintiff.  This documentation includes records of the
age, diagnosis, and length of stay of patients typically served by Greenlawn Nursing
Home, evidence of physical facility limitations at Greenlawn that would have made it

impossible to accommodate patients needing skilled nursing services, documentation that

Greenlawn employed less skilled than non-skilled staff, and sworn testimony before the

PRRB that the vast majority of services furnished at Greenlawn Nursing Home were not

skilled nursing services, and indeed verifying that Greenlawn could not have furnished a

significant amount of skilled nursing services, due to the type and amount of its annual

expenditures as well as its failure to obtain a requisite waiver from limitations stemming

from its State licensure as a Level III facility.

45.     Plaintiff submitted a letter to the FI dated August 24, 2007, copied to CMS,

stating that it had already submitted all documentation that it had available regarding the

services furnished at Greenlawn and disagreeing with several of the statements made by

CMS in its correspondence (attached to the FI's August 1, 2007 letter).

46.     By letter dated November 9, 2007, from Sheila Lambowitz, Director,

Chronic Care Policy Group Division of Institutional Post-Acute Care, to Mr. Vinnie

Guarino of Associated Hospital Services, CMS communicated to Plaintiff's FI a decision

characterized as a new "final determination of the CMS as it relates to the request of

Jordan Hospital…for an exemption to the skilled nursing facility routine service cost limit

(SNF RCL) for the cost reporting period ended September 30, 1998."

47.     In that letter Ms. Lambowitz, on behalf of CMS, stated that Plaintiff's

"request to be exempt from the SNF RCL for the cost reporting period ended September

30, 1998 is denied."

48.     Plaintiff and its counsel became aware of the existence and substance of this

letter on or about January 4, 2008.

## COUNT I

### MANDATORY DUTY TO IMPLEMENT FINAL AGENCY DECISION

49.      Plaintiff realleges and incorporates by reference paragraphs 1-48 of the Complaint as if fully set forth below.

50.      Because the Administrator did not affirm, reverse, or modify the decision of the PRRB with respect to Plaintiff's FY 1998 within the statutory 60 day period after Plaintiff's receipt of the decision, and did not remand the case to the PRRB as permitted by 42 C.F.R. 405.1875(g), the PRRB's decision respecting FY 1998 remains the final decision of CMS, by operation of law.

51.      The PRRB's decision, which pursuant to the Medicare statute represents final agency action with respect to Plaintiff's FY 1998, granted Plaintiff's request for a new provider exemption.

52.      The Secretary has a non-discretionary, mandatory duty to give effect to this final decision and action of CMS.

53.      The Secretary accordingly has a legal duty to apply the new provider exemption to Plaintiff's FY 1998 and to adjust Plaintiff's final program reimbursement to reflect that exemption.

## COUNT II

### VIOLATION OF THE MEDICARE STATUTE AND REGULATIONS

54.      Plaintiff realleges and incorporates by reference paragraphs 1-48 of the Complaint as if fully set forth below.

55.      Actions the Administrator has authority to take with respect to a decision of the PRRB are limited to reversing, affirming, or modifying a decision of the PRRB, or

vacating a Board decision in conjunction with remanding the underlying case back *to the PRRB* for issuance of a new decision based on development of additional facts or new issues, or on consideration of the applicability of additional laws or regulations.  42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875(g),(h).

56.    The Administrator lacks authority, under the applicable provisions of the Medicare statute and regulations, to vacate a decision of the PRRB in a Medicare provider appeal, except insofar as a remand by the Administrator to the PRRB for further consideration has the effect of vacating an earlier decision pursuant to 42 C.F.R. § 405.1875(h).  The governing statute and regulations make no provision for vacating a decision of the PRRB and remanding an appeal to CMS or any entity other than the PRRB.

57.    By purporting to vacate the PRRB's decision in Plaintiff's case, and remanding the case to CMS for reconsideration under additional criteria, Defendant violated the Medicare statute and its implementing regulations and acted contrary to the procedures established therein for disposition of provider appeals.

58.    Defendant's action, in violation of applicable law and regulation, was *ultra vires* and of no force and effect as a matter of law.

59.    Because, in the absence of action by the Administrator within the statutory 60 day time period affirming, reversing, or modifying the PRRB's February 27, 2007, or alternatively remanding the underlying case back to the PRRB, that decision became a final and legally binding agency decision; Defendant's failure to implement and give effect to that decision violated the Medicare statute and regulations.

60.    The Secretary's regulation at 42 C.F.R. § 413.30(d) mandates application of a new provider exemption to a period beginning on the date when a SNF accepts its first

patient and extending at least until the end of the SNF's first Medicare cost reporting period beginning at least two years after such date.

61.     Insofar as the Administrator's conclusion regarding the scope of the Board's jurisdiction to apply the new provider exemption to Plaintiff's FY 1996 and 1997 cost years may be deemed a modification or reversal of the PRRB's February 27, 2007 decision, that decision is inconsistent with and violates 42 C.F.R. § 413.30(d).

**COUNT III**

**<u>ARBITRARY AND CAPRICIOUS AGENCY ACTION</u>**

62.     Plaintiff realleges and incorporates by reference paragraphs 1-48 of the Complaint as if fully set forth below.

63.     The Administrator's action of "vacating" the decision of the PRRB while "remanding" the case back to CMS for further consideration on the question of Plaintiff's entitlement to a new provider exemption was arbitrary, capricious, an abuse of discretion, and contrary to law, in violation of the standards for valid agency action established in provisions of the Administrative Procedure Act at 5 U.S.C. § 706.

64.     The Administrator's decision vacating the PRRB's decision is legally invalid and should be set aside.

65.     Defendant's failure to implement and give effect to the PRRB's February 27, 2007, decision was arbitrary and capricious and an abuse of discretion, in light of the fact that the decision became final and legally binding due to the Administrator's failure within the statutory 60 day period to affirm, reverse, or modify the PRRB's decision, or alternatively to remand the underlying case back to the Board.

66.    The Administrator's conclusion that the PRRB lacked jurisdiction to order

application of a new provider exemption to Plaintiff's FYs 1996 and 1997 is incorrect as a

matter of law; and the Administrator's decision that relief granted in the case must be

limited to a single cost year is arbitrary, capricious, an abuse of discretion, and otherwise

contrary to law, in contravention of the standards and provisions of Section 706 of the

Administrative Procedure Act, 5 U.S.C. § 706.

67.    The Administrator's conclusion regarding the PRRB's jurisdiction over

application of Plaintiff's new provider exemption to Provider's FYs 1996 and 1997 is

invalid and should be set aside.

68.    There is no valid basis for a CMS conclusion that Plaintiff has submitted

inadequate documentation of the type of services furnished to patients by Greenlawn. In

light of the documentation and evidence of these services that Plaintiff has submitted to its

FI and through sworn testimony on the record of a hearing before the PRRB, it is arbitrary

and capricious and an abuse of discretion for CMS to request further documentation of

Greenlawn's services, and in particular the nature of the majority of the services it

provided to its patients.

COUNT IV

**DEPRIVATION OF DUE PROCESS**

69.    Plaintiff realleges and incorporates by reference paragraphs 1-48 of the

Complaint as if fully set forth below.

70.    The Medicare statute and federal regulations in Chapter IV of Title 42 of

the Code of Federal Regulations establish the process Plaintiff is due with regard to its

appeal of the Medicare program determinations at issue in this case.

71.     By failing to follow the procedures described in 42 C.F.R. § 405.1875 with

respect to administrative review of a PRRB decision, which procedures do not include any

process for vacating a decision of the PRRB except where the underlying case is remanded

back to the PRRB itself, the Administrator's Decision and action of April 30, 2007, has

deprived Plaintiff of property without due process of law.

**WHEREFORE**, Plaintiff requests relief as follows:

(1)     A declaration by the Court that the decision of the Administrator vacating

the decision of the PRRB dated February 27, 2007 regarding Plaintiff's FY 1998, and

remanding to CMS the issue of Plaintiff's entitlement to a new provider exemption for FY

1998, is legally invalid and should set aside.

(2)     A declaration by the Court that the CMS "determination" set forth in the

letter to Plaintiff's FI dated November 9, 2007 is invalid and of no force and effect, and

must be disregarded by the FI.

(3)     A declaration by the Court that the decision of the PRRB dated February

27, 2007 with respect to Plaintiff's entitlement to a new provider exemption, and

application of that exemption to Plaintiff's FYs 1996 through 1998, represents a final

agency decision and action, and must be given full legal force and effect by the Secretary

and his agents and delegates.

(4)     A declaration by the Court that the new provider exemption to which

Plaintiff is entitled pertains to each of its FYs 1996, 1997 and 1998, and that the PRRB had

jurisdiction to order adjustment of the Plaintiff's Medicare reimbursement for each of these

fiscal years to reflect the exemption.

(5)    An order requiring the Secretary, through CMS and Plaintiff's FI, to adjust

Plaintiff's Medicare reimbursement for its FYs 1996 through 1998 to reflect application to

those years of the new provider exemption from RCLs to which Plaintiff was and is

entitled, to reimburse to Plaintiff all amounts that Plaintiff would have received in

Medicare reimbursement had the exemption been applied *ab initio* to its FYs 1996, 1997,

and 1998, and to pay Plaintiff interest on such amounts pursuant to 42 C.F.R.

§ 1395oo(f)(2).

(6)    An order awarding Plaintiff its costs and fees incurred in this litigation, and

such other relief as this Court deems just and appropriate.

Respectfully submitted,


 s/Barbara Straub Williams____
Barbara Straub Williams
(D.C. Bar No. 396582)
Edith S. Marshall
(D.C. Bar No. 328310)
Ronald S. Connelly
(D.C. Bar No. 488298)
POWERS PYLES SUTTER & VERVILLE, PC
1501 M Street, N.W., 7th Floor
Washington, D.C.  20005
(202) 466-6550

Attorneys for Plaintiff, Jordan Hospital


Dated:  January 9, 2008