## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JORDAN HOSPITAL,

      **Plaintiff,**

        **v.**                                               Civil Action No.  07-1160 (JDB)

MICHAEL O. LEAVITT, **Secretary of the**
**United States Department of Health and**
**Human Services,**

      **Defendant.**

## MEMORANDUM OPINION

Plaintiff Jordan Hospital brings this civil action against Michael O. Leavitt, Secretary of

the United States Department of Health and Human Services ("Secretary"), pursuant to the

Medicare statute, 42 U.S.C. § 1395oo(f), the federal question statute, 28 U.S.C. § 1331, the

Declaratory Judgment Act, 28 U.S.C. § 2201, and the federal mandamus statute, 28 U.S.C. §

1361, challenging a remand decision of the Administrator of the Centers for Medicare and

Medicaid Services.  Currently before the Court is the Secretary's motion to dismiss the amended

complaint for lack of subject-matter jurisdiction.  Upon careful consideration of the motion, the

parties' memoranda, the arguments advanced at the motion hearing held on August 1, 2008, the

applicable law, and the entire record, and for the reasons set forth below, the Court will grant the

Secretary's motion to dismiss.

## BACKGROUND

**I.**      **Statutory and Regulatory Background**

The Medicare program, set forth in Title XVIII of the Social Security Act, is a federally

funded health insurance program that furnishes health benefits to participating individuals age sixty-five and older and to qualifying disabled persons.  See 42 U.S.C. §§ 1395-1395hhh.  Part A of the Medicare statute covers payment for provider services, such as inpatient hospital services and skilled nursing services.  See id. §§ 1395c, 1395d, 1395i, 1395x(b), (i).  Although the program is administered by the Centers for Medicare and Medicaid Services ("CMS"), the Secretary has contracted out many payment functions to organizations known as fiscal intermediaries.

One type of institution that may participate in the Medicare program is a "skilled nursing facility," which primarily provides "(A) skilled nursing care and related services for residents who require medical or nursing care, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons."  Id. § 1395i-3(a).  During the relevant time period for this action, the Medicare program paid skilled nursing facilities the "reasonable cost" of covered services.  Id. § 1395x(v).  The "reasonable cost" of a service is "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services."  Id. § 1395x(v)(1)(A).  Federal regulations place certain caps on the costs that may be recognized as reasonable, and these caps are known as "routine service cost limits."  See 42 C.F.R. § 413.30(a)-(b) (1996).

Because new skilled nursing facilities usually incur increased costs during their first years of operation, the "new provider exemption" establishes that reimbursement for certain new facilities is not constrained by routine service cost limits.  To qualify for the new provider exemption, a skilled nursing facility must be "a provider of inpatient services that has operated as a [skilled nursing facility] (or the equivalent) for which it is certified for Medicare, under present

and previous ownership, for less than 3 full years." Id. § 413.30(d).  A new provider exemption "expires at the end of the [skilled nursing facility's] first cost reporting period beginning at least 2 years after the provider accepts its first inpatient." Id.

To receive Medicare reimbursement, a provider must file a cost report with its fiscal intermediary at the close of a fiscal year. Id. § 413.24(f).  The fiscal intermediary then analyzes and audits the cost report, makes a final determination of the Medicare reimbursement amount due to the provider, and issues an initial notice of program reimbursement. Id. § 405.1803. Within 180 days of the initial notice of program reimbursement, a provider may request a hearing on the reimbursement amount before the Provider Reimbursement Review Board ("Board" or "PRRB"), see 42 U.S.C. § 1395oo(a), (b), or the provider may make a request to the fiscal intermediary for a new provider exemption, which tolls the 180 day period, see 42 C.F.R. § 413.30(c).  If the provider files a request for a new provider exemption, the intermediary makes a recommendation to the agency, which then makes the ultimate decision whether an exemption will be granted. See id. § 413.30(d).  The provider may then appeal the agency's decision to the Board. See 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1875.

Once the Board issues its decision, it is final unless the Administrator chooses to review it. See 42 C.F.R. § 405.1877(a).  In that situation, the Administrator "will affirm, reverse, modify or remand the case" within sixty days after the provider received notice of the Board's decision. Id. § 405.1875(g).  A provider may "obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." 42 U.S.C. §

1395oo(f)(1).

## II.    Factual and Procedural Background

Jordan Hospital is a not-for-profit hospital located in Plymouth, Massachusetts.  Am.

Compl. ¶ 1.  In 1992, Massachusetts law provided a procedure for an entity to obtain a

Determination of Need to open a skilled nursing facility if the entity first arranged for the closure

of another nursing facility.  Id. ¶ 24.  Jordan Hospital therefore entered into a contract with

Shirley Dionne, the operator of Greenlawn Nursing Home, a Level III nursing facility in

Middleboro, Massachusetts, whereby Dionne agreed to surrender her license to operate

Greenlawn and to assist Jordan Hospital in obtaining the right to operate a skilled nursing

facility.  Id. ¶¶ 25-26.  In December 1995, Jordan Hospital opened and admitted the first patient

to its twenty-five bed skilled nursing facility known as the Peter Chapman Transitional Care

Unit, and in that same month the unit received certification to participate in the Medicare

program.  Id. ¶¶ 1, 28.

On June 17, 1997, Jordan Hospital applied to its fiscal intermediary for a new provider

exemption pursuant to 42 C.F.R. § 413.30(c), (d).  Id. ¶ 30.  Because Jordan Hospital had been

reassigned to a new fiscal intermediary, the exemption application was resubmitted on December

31, 1997.  Id.  CMS denied the request for a new provider exemption, and the notice of program

reimbursement for Jordan Hospital's fiscal year 1998 cost report was issued on September 25,

2000.  Id. ¶¶ 31-32.  Jordan Hospital timely appealed the 1998 notice of program reimbursement

and later added to its appeal the issue of whether the new provider exemption had been properly

denied.  Id. ¶ 32.

After an evidentiary hearing, the Board issued a decision on February 27, 2007, reversing

CMS's determination and granting Jordan Hospital the new provider exemption.  Id. ¶ 36.

Because a new provider exemption "expires at the end of the [skilled nursing facility's] first cost

reporting period beginning at least 2 years after the provider accepts its first inpatient," 42 C.F.R.

§ 413.30(d), the Board majority determined that Jordan Hospital was entitled to the new provider

exemption for three years by operation of law.  The Board majority therefore granted the

exemption for 1996, 1997, and 1998, while two Board members dissented and argued that the

Board's jurisdiction was limited to the 1998 cost reporting period that was on appeal.  Am.

Compl. ¶ 36.  After the Administrator reviewed the record, he vacated the Board's decision on

April 30, 2007, and remanded the matter to the agency to consider the criteria set forth in a recent

decision of the D.C. Circuit, St. Elizabeth's Med. Ctr. v. Thompson, 396 F.3d 1228 (D.C. Cir.

2005).  Id. ¶ 37.

   Jordan Hospital thereafter filed its complaint with this Court on June 28, 2007.  Jordan

Hospital alleges that the Administrator's remand to the agency violated the Medicare statute and

its implementing regulations and denied Jordan Hospital due process of law; that the

Administrator's action was arbitrary, capricious, an abuse of discretion, and contrary to law in

violation of the Administrative Procedure Act; and that the Administrator has a non-

discretionary, mandatory duty to implement the Board's February 27, 2007 decision.  The

Secretary has moved to dismiss the complaint for lack of subject-matter jurisdiction, arguing that

there is no final agency action to be reviewed because Jordan Hospital is challenging an interim

remand decision of the Administrator.

   After the matter was remanded to the agency, CMS requested additional documentation

to review the type of services that were previously provided by Greenlawn.  Am. Compl. ¶ 41.  In

response, Jordan Hospital indicated that it had already submitted all available documentation. Id. ¶ 45. CMS then issued a "final determination" denying Jordan Hospital's "request to be exempt from the [skilled nursing facility] [routine service cost limits] for the cost reporting period ended September 30, 1998," id. ¶ 46, and Jordan Hospital has now appealed that determination to the Board. The administrative proceedings are thus ongoing.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"); see also Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 18 (D.D.C. 1998). A court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, (1993); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997). However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the allegations set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Furthermore, "'plaintiff[s'] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350).[1]

## DISCUSSION

I.    **Jurisdiction to Review the Administrator's April 30, 2007 Decision**

A.    **The Medicare Statute**

The Secretary argues that the Medicare statute, by operation of 42 U.S.C. §§ 405(h), 1395ii, and 1395oo(f), is the exclusive source of federal court jurisdiction over Medicare provider reimbursement disputes. "[W]here Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive." Whitney Nat'l Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 420 (1965). Pursuant to the explicit terms of the Medicare statute, the Secretary argues that this Court lacks subject-matter jurisdiction to review the Administrator's April 30, 2007 decision because it is an interim, rather than a final, agency action. Section 1395ii of the Medicare statute incorporates 42 U.S.C. § 405(h) of the Social Security Act, which provides that "[n]o findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. §§ 405(h); 1395ii. The Medicare statute further sets forth in 42 U.S.C. § 1395oo(f) the procedures to be followed to obtain judicial review of a reimbursement decision by the Board or the Secretary. See Goleta Valley Cmty. v. Leavitt, 2006 WL 4050410, at *5 (D.D.C. Dec. 21, 2006) (stating that "42 U.S.C. § 1395oo(f) is the only way a provider can seek judicial review of a decision made by the Board or the

---

[1]   A court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case. See Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003); St. Francis Xavier Parochial Sch., 117 F.3d at 624-25 n.3.

Administrator").

A provider must have received a final decision to invoke the jurisdiction of the federal courts. Pursuant to 42 U.S.C. § 1395oo(f), "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." See also 42 C.F.R. § 405.1877(a) (A provider may "obtain judicial review of a final decision of the Board, or of a reversal, affirmation, or modification by the Administrator of a Board decision, by filing a civil action pursuant to the Federal Rules of Civil Procedure within 60 days of the date on which the provider received notice of -- (1) A final decision by the Board; or (2) Any reversal, affirmance, or modification by the Administrator.").

Here, both parties agree that "an order for remand is not a final agency action subject to review." Pl.'s Opp. at 1. In Goleta Valley Cmty., the court noted that in revising the Medicare regulations in 1983, "consideration was given to whether a remand by the Administrator should be subject to judicial review, but that suggestion was not accepted." 2006 WL 4050410, at * 6 (dismissing for lack of jurisdiction an appeal of the Administrator's decision, which vacated the Board's decision and remanded the case to the agency). See Pueblo of Sandia v. Babbitt, 231 F.3d 878, 880 (D.C. Cir. 2000) ("It is well settled that, as a general rule, a district court order remanding a case to an agency for significant further proceedings is not final.") (quoting In re St. Charles Pres. Investors, Ltd., 916 F.2d 727, 729 (D.C. Cir. 1990)); Am. Hawaii Cruises v. Skinner, 893 F.2d 1400, 1403 (D.C. Cir. 1990).

Because Jordan Hospital is challenging the Administrator's decision remanding the matter

-8-

to CMS, the Secretary argues that Jordan Hospital may not invoke the jurisdiction of the Court at this time and must instead wait for the ongoing administrative process to yield a final judicially-reviewable decision.[2]  Although Jordan Hospital agrees that the Medicare statute typically forecloses judicial review of a remand decision by the Administrator, Jordan Hospital argues that the Administrator lacked the authority to remand this matter directly to the agency and the Administrator's action was therefore ultra vires.  To ensure that the remand does not elude judicial review, Jordan Hospital argues that the Court should exercise jurisdiction at this time pursuant to Leedom v. Kyne, 358 U.S. 184 (1958).

### B.    Leedom Jurisdiction

In Leedom, the Supreme Court held that a federal district court had jurisdiction to vacate the National Labor Relations Board's determination where the Board had acted in excess of its delegated powers and contrary to section 9(b)(1) of the National Labor Relations Act.  See 358 U.S. at 185.  Section 9(b)(1) of the National Labor Relations Act, 29 U.S.C. §  159(b)(1), provided that "in determining the unit appropriate for collective bargaining purposes, 'the Board shall not (1) decide that any unit is appropriate for such purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit.'"  Id. at 182.  In clear violation of

---

[2]In an attempt to elude the fact that the Medicare statute does not authorize judicial review of remands, Jordan Hospital occasionally purports to be appealing the Board's February 27, 2007 decision.  See Pl.'s Opp. at 13-14.  Jordan Hospital notes the oddity of this argument, however, as it would therefore be appealing a decision that was obtained in its favor and that has subsequently been vacated.  Id. at 14.  Regardless of the linguistic spin that Jordan Hospital employs, its basic argument remains the same.  In substance, Jordan Hospital is challenging the Administrator's authority to remand the matter to CMS.  The Board's decision could only be deemed final if the Administrator altogether lacked this authority to vacate and remand.

that provision, the Board included both professional and nonprofessional employees in a bargaining unit without taking a vote among the professional employees to see if a majority would "vote for inclusion" in the unit.  Id. at 184-85.

    In recent years, the D.C. Circuit has emphasized that Leedom jurisdiction "is extraordinary" and "extremely narrow in scope."  Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1263 (D.C. Cir. 2006).  "Thus, in order to justify the exercise of Leedom jurisdiction, a plaintiff must show, first, that the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition' which 'is clear and mandatory,' and, second, that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'"  Id. (internal citations omitted).  Here, the Secretary argues that no statute or regulation specifically prohibits the Administrator from remanding a matter to CMS, and the Secretary further argues that Jordan Hospital can fully vindicate its rights by exhausting its administrative remedies.  Jordan Hospital, of course, disagrees in both respects, and the issue therefore requires a closer inspection of the Administrator's authority to remand.

    In Gulf Coast Home Health Servs., Inc. v Califano, the court concluded that there was no impediment "in the language or spirit of the review provision" of the Medicare statute to prevent the Administrator from remanding a matter.  1978 U.S. Dist. LEXIS 15069, at *4 (D.D.C. Oct. 10, 1978).  The court noted that "[r]eviewing bodies are generally considered to have inherent powers to remand to the initial decision maker, and administrative reviewers should not be deemed to lack such power, absent an explicit statutory bar."  Id. at *4-5.  Thereafter, the agency promulgated regulations regarding the Administrator's authority to remand.

Pursuant to 42 C.F.R. § 405.1875(g)(1), "[i]f the Administrator has notified the parties and CMS that he or she has decided to review a Board decision, the Administrator will affirm, reverse, modify or remand the case." The Secretary relies on this language and argues that the Administrator is therefore not prohibited from remanding to CMS rather than to the Board because the regulation is silent as to what body should be the object of a remand decision. The Secretary argues that "because the regulation and contemporaneous agency interpretation are silent on this specific point, the Secretary is entitled to deference." Def.'s Reply at 8 (citing Tenet Healthsystems Healthcorp v. Thompson, 254 F.3d 238, 248 (D.C. Cir. 2001) (holding that "[w]hen an agency regulation is silent or ambiguous with respect to the specific point at issue," the Court "must defer to the agency's interpretation as long as it is reasonable")); see also Milton Hosp. Transitional Care v. Thompson, 377 F. Supp. 2d 17, 24 (D.D.C. 2005) (stating that "if the language of a regulation does not speak[] clearly to the precise question at issue in a case . . . the court must give substantial deference to the agency's resolution of the resulting ambiguity") (internal quotation marks omitted). The Secretary also points out that the Administrator has remanded to CMS on previous occasions, albeit rarely. See Goleta Valley Cmty., 2006 WL 4050410, at *5; St. Joseph's Health Servs. v. BlueCross BlueShield Ass'n, 2005 WL 3741453, at *8 (July 13, 2005) (Administrator review of Board decision).

On May 23, 2008, long after the remand challenged here, the Secretary published a final rule to amend 42 C.F.R. § 405.1875. This revised regulation now specifies that the Administrator may remand not only to the Board but to "any component of HHS or CMS or to an intermediary under appropriate circumstances." 73 Fed. Reg. 30190, 30263-64 (May 23, 2008) (to be codified at 42 C.F.R. § 405.1875(f)(5)). The Secretary notes that the preamble specifically

explains that these changes were adopted as "clarifications" to the existing regulations and procedures and therefore argues that the agency has maintained a consistent position on the Administrator's authority to remand.  73 Fed. Reg. 30228.

In response, Jordan Hospital contends that prior to the recent amendment, the regulations confined the Administrator's authority to remand only to the Board and not to CMS.  See Am. Compl. ¶ 56 ("The governing statute and regulations make no provision for vacating a decision of the PRRB and remanding an appeal to CMS or any entity other than the PRRB.").  Jordan Hospital argues that the Secretary cannot read § 405.1875(g)(1) in isolation but must instead also consider the following subsection, § 405.1875(h), which specifically refers to and explains the effect of the Administrator's remand to the Board.  See 42 C.F.R. § 1875(h) ("A remand to the Board by the Administrator vacates the Board's decision.").  There is no comparable provision referring to and explaining the effect of a remand to CMS.  Citing the 1983 remand regulations and the corresponding preamble discussion, Jordan Hospital notes that the "preamble discussion indicates that CMS never contemplated anything other than that the Administrator would remand to the PRRB."  Pl.'s Opp. at 8.  Jordan Hospital therefore argues that the Administrator has no authority to remand directly to CMS, an argument that has some force.

On a related point, in Jordan Hospital's opposition, it appears to concede that the Administrator has the authority to remand to the Board with instructions for the Board to remand to CMS, but Jordan Hospital takes a different position in its supplemental memorandum.  There, Jordan Hospital broadly asserts that "it is questionable whether the Medicare statute gives the Secretary the power to remand to any entity, including the PRRB."  Pl.'s Supp. Mem. at 2.  Jordan Hospital notes that in the preamble to the new regulation, the Secretary admits "that there

is a split of authority on the issue of whether the Administrator has remand authority." 73 Fed.

Reg. 30228. Jordan Hospital argues that "at least two courts have held that, because 42 U.S.C. §

1395oo(f)(1) gives authority to the Secretary (or delegate) only to reverse, affirm, or modify a

PRRB decision, the Secretary has no remand authority." Pl.'s Supp. Mem. at 2 (citing Lifemark

Hosps. of Mo., Inc. v. Sullivan, 1992 WL 159781, at *2 (W.D. Mo. Apr. 2, 1992), and Boulder

Cmty. Hosp. v. Heckler, 1985 WL 81771, at *1 (D.D.C. Oct. 3, 1985)). Although the Secretary

recognizes the split of authority on this issue, the Secretary continues to believe Gulf Coast

Home Health Servs. reached the correct resolution in finding that the Administrator has the

inherent power to remand. 1978 U.S. Dist. LEXIS 15069, at *3.

       This is an intriguing question regarding the Administrator's authority to remand to CMS

or to any other entity, but the Court need not resolve this "thorny issue" at this time. See County

of Los Angeles v. Dep't of Health and Human Servs., 2001 WL 1946126, at *2 (D.D.C. June 6,

2001) (finding it "unnecessary to reach the thorny issue of whether the statute grants remand

authority to the Administrator"). The issue arises in the context of the "extremely narrow"

federal jurisdiction available under Leedom v. Kyne, and to justify the exercise of such

jurisdiction an agency must have acted contrary to a clear and mandatory prohibition. Here, both

parties have raised compelling arguments regarding the proper interpretation of the relevant

statute and regulations, and both parties acknowledge the split of authority regarding the

Administrator's authority to remand. Hence, the Court "cannot conclude that [the Administrator's

remand decision] contravened a clear and specific statutory mandate as required by Leedom."

Nat'l Air Traffic Controllers Ass'n, 437 F.3d at 1263 (explaining that because the parties raised

compelling arguments regarding the proper interpretation of the disputed statute the Court could

not conclude that the defendant's action violated a clear statutory mandate).  In fact, Jordan

Hospital concedes that there is no clear and specific statutory mandate that has been violated, and

instead attempts to expand <u>Leedom</u> jurisdiction to situations where the agency has arguably taken

too expansive an interpretation of a governing statute.  But in light of the D.C. Circuit's clear

statement that "<u>Leedom</u> jurisdiction is extremely narrow in scope," <u>id.</u>, Jordan Hospital's attempt

to stretch <u>Leedom</u> jurisdiction goes too far.  The Court therefore cannot conclude that Jordan

Hospital has satisfied the first prerequisite under <u>Leedom</u>.

      Even if Jordan Hospital could demonstrate that the Administrator violated a specific

prohibition which is clear and mandatory, Jordan Hospital "still could not assert jurisdiction

under <u>Leedom</u>, because [it has] not been 'wholly deprive[d] . . . of a meaningful and adequate

means of vindicating [its alleged] statutory rights.'"  <u>Id.</u> at 1264-65 (quoting <u>Bd. of Governors of</u>

<u>Fed. Reserve Sys. v. MCorp Fin., Inc.</u>, 502 U.S. 32, 43 (1991)).  In fact, Jordan Hospital is still

proceeding through the administrative review process and has appealed CMS's post-remand

determination to the Board.  Once a final decision had been reached at the conclusion of that

process, Jordan Hospital may then obtain judicial review from a federal court.  At that time,

Jordan Hospital will be able to raise all claims of error related to the administrative proceedings.

<u>See</u> <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368, 374 (1981) (explaining that "a party

must ordinarily raise all claims of error in a single appeal following final judgment on the

merits").

      Although Jordan Hospital originally feared the Secretary "would not allow it to raise

before the District Court the issue of whether the Administrator's remand during the first

administrative process was proper," Pl.'s Opp. at 18, that fear was put to rest at the motion

hearing held before this Court.  At that time, the Secretary conceded that Jordan Hospital would

be able to raise all claims of error once a final decision has been reached.  As the Secretary stated

in its reply brief, once Jordan Hospital "has exhausted its administrative remedies it will

ultimately be able to argue in federal district court that the remand was ultra vires and that the

original PRRB decision should be reinstated."  Def.'s Reply at 4-5; see also Def.'s Reply at 6

(stating that after plaintiff receives a final agency decision it "can raise all issues concerning the

lawfulness of the agency's decision, including any issues regarding the Administrator's remand

authority").  Jordan Hospital therefore plainly retains "a meaningful and adequate means of

vindicating its statutory rights" through the administrative proceedings and through subsequent

judicial review of any final agency action.[3]  Hence, Jordan Hospital has not satisfied the

necessary prerequisites to justify the exercise of Leedom jurisdiction.

### C.    Federal Question Jurisdiction and Mandamus

Jordan Hospital's attempts to invoke this Court's jurisdiction under 28 U.S.C. §§ 1331

and 1361 fare no better.  Pl.'s Opp. at 17.[4]  In fact, federal question jurisdiction is specifically

precluded under 42 U.S.C. § 405(h), as incorporated into the Medicare statute by 42 U.S.C. §

1395ii.  See 42 U.S.C. § 405(h) ("No action against the United States, [the Secretary], or any

officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on

---

[3]Because Jordan Hospital will not be foreclosed from raising the ultra vires argument as the administrative proceedings continue, Sullivan v. Finkelstein, 496 U.S. 617 (1990), also fails to support the exercise of jurisdiction here.

[4]Although Jordan Hospital cited the Declaratory Judgment Act in the Amended Complaint, the Declaratory Judgment Act, 28 U.S.C. § 2201, "is not an independent source of federal jurisdiction."  C&E Serv., Inc. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002).  Jordan Hospital appears to concede this point and does not rely on the Declaratory Judgment Act in its briefs.

any claim arising under this subchapter."); 1395ii (incorporating § 405(h)).  "Plaintiff agrees that,

generally, jurisdiction over Medicare cost report disputes must be grounded in 42 U.S.C. §

1395oo(f) and cannot be brought under 28 U.S.C. § 1331."  Pl.'s Opp. at 17.  Yet once again

Jordan Hospital argues that an exception applies here.

According to Jordan Hospital, Bowen v. Michigan Academy of Family Physicians, 476

U.S. 667 (1986), holds that "§ 1395ii does not apply §405(h) where application of § 405(h)

would not simply channel review through the agency, but would mean no review at all."  Shalala

v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 19 (2000) (discussing Bowen).  But

Jordan Hospital has not demonstrated that absent federal question jurisdiction it would have no

avenue for review of the Administrator's alleged unauthorized remand to CMS.  To the contrary,

as discussed above, the Secretary has conceded that Jordan Hospital will be able to raise all

issues from the administrative process in an appeal following final agency action.  Thus, this

exception is inapplicable, and Jordan Hospital cannot rely on 28 U.S.C. § 1331.

Jordan Hospital also attempts to invoke jurisdiction pursuant to 28 U.S.C. § 1361.  "The

common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy

for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes

him a clear and nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616 (1984).  Here,

Jordan Hospital asserts that the Secretary has a clear and nondiscretionary duty to implement the

Board's February 27, 2007 decision.  It argues that the Administrator did not take an authorized

action to reverse, affirm, or modify the Board's decision, and that accordingly "the

Administrator's failure to act renders the Board's decision final."  Pl.'s Opp. at 20.  As the

Secretary notes, "[t]his argument simply restates Plaintiff's position that the Secretary was

-16-

without authority to remand." Def.'s Reply at 13. Just as the Court was unpersuaded by the previous articulation of Jordan Hospital's argument, it is similarly unconvinced that the Secretary has a clear and nondiscretionary duty to implement the Board's decision, which has been vacated. And in any event, Jordan Hospital has yet to exhaust its administrative remedies and is in fact still proceeding through the administrative process on appeal. Because mandamus jurisdiction is only available where a plaintiff has exhausted all other avenues of relief, mandamus jurisdiction is not available here.

## II.    Jurisdiction Over Fiscal Years 1996 and 1997

Lastly, Jordan Hospital argues that "at the very least, this Court has jurisdiction over the Administrator's decision as to fiscal years 1996 and 1997." Pl.'s Opp. at 21. In the underlying administrative proceedings, Jordan Hospital only appealed the agency's determination regarding the fiscal year 1998 cost report and the new provider exemption. Upon review of CMS's determination, the Board majority granted the exemption and determined that it applied to cost years 1996, 1997, and 1998 by operation of law. When the Administrator reviewed the Board's decision, he noted in a footnote that he agreed "with the Dissenters that this case is limited to the FYE 9/30/98 cost report appeal of the new provider exemption." Def.'s Ex. 2 at 15 n.23. The Administrator further explained that "as the right to a Board hearing is specifically for a cost reporting period, the proper appeal of one cost report does not confer to the Board jurisdiction to review other cost reports not otherwise appealed." Id. The Administrator vacated the Board's decision and remanded the matter to the agency for further consideration of "the facts, circumstances, and cost year presented in this specific case." Id. at 15.

Although the "Administrator's decision does not state explicitly that it reverses" the

-17-

Board's decision regarding fiscal years 1996 and 1997, Jordan Hospital argues that "the effect appears to be the same." Pl.'s Opp. at 4. Jordan Hospital therefore argues that the Administrator's action constitutes a reversal of the Board's decision for fiscal years 1996 and 1997 and that judicial review of these years is proper pursuant to 42 U.S.C. § 1395oo(f)(1).

Both parties agree, however, that the outcome for fiscal years 1996 and 1997 is completely dependent on the resolution for fiscal year 1998, which was remanded to CMS for further consideration. See 42 C.F.R. § 413.30(d). Jordan Hospital admits that it would likely have to request a stay in this Court regarding fiscal years 1996 and 1997 pending a final administrative decision on fiscal year 1998. The Secretary therefore argues that "Plaintiff's suggestion that this Court should review just that portion of the remand decision which addressed the Board's jurisdiction over cost years 1996 and 1997" is impractical and "would entail the sort of piecemeal review that the administrative exhaustion requirement is intended to avoid." Def.'s Reply at 13-14 n.12. Because Jordan Hospital cites no applicable exception to the general rule that "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits," Firestone Tire & Rubber Co., 449 U.S. at 374, and because no prejudice to Jordan Hospital will ensue if review for cost years 1996 and 1997 is deferred, the Court agrees that it would be impractical and improper to retain jurisdiction over cost years 1996 and 1997 at this time.

## CONCLUSION

For the foregoing reasons, this Court lacks jurisdiction to entertain Jordan Hospital's amended complaint. Although the Court is cognizant of Jordan Hospital's frustration with the pace of the ongoing administrative proceedings, those proceedings may still yield a favorable

outcome for Jordan Hospital. The Court will therefore grant the Secretary's motion to dismiss.

A separate order accompanies this memorandum opinion.


_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   August 15, 2008